**STATE of Delaware, Plaintiff,**

v.

**John H. BAILEY, Defendant.**

Superior Court of Delaware,
New Castle.

Submitted Jan. 19, 1976.

Decided Jan. 27, 1976.

John X. Denney and Richard J. Mc-Mahon, Deputy Attys. Gen., Dept. of Justice, Wilmington, for the State of Delaware.

Morton R. Kimmel and Paul H. Spiller, Kimmel, Spiller & Bradley, Wilmington, for defendant.

CHRISTIE, Judge.

Defendant was indicted on charges of murder in the first degree and possession of a deadly weapon during the commission of a felony. After a jury trial, the jury found him guilty of the lesser included offense of manslaughter and of possession of a deadly weapon during the commission of a felony. The trial began November 18, 1975, and lasted approximately four weeks. During the presentation of evidence, the jury was not confined or sequestered; but, after the jury was charged and the case was in its hands for decision, the jury was sequestered and was kept together for about 24 hours until it arrived at its verdict.

After the jury had been sequestered and had begun to deliberate, it was conducted

to the Du Pont Hotel, one block from the Court House, for dinner. Three uniformed court bailiffs had been sworn as being the bailiffs officially in charge of the jury. During the dinner hour, the three sworn bailiffs were joined by the chief bailiff, two or three additional uniformed court bailiffs, two court security officers and four Wilmington police officers in conducting the jury on foot to the hotel grill room and guarding them there during dinner.

During the meal, the jury sat at one large table by themselves and all of the court personnel, together with the police officers, sat at a separate large table about 15 or 20 feet away.

At the table occupied by the court personnel were the bailiffs, the court security officers and the police officers as well as the official court reporter and the presiding judge. The judge, who joined the group at the hotel, did not sit next to any of the police officers, and his part of the table was not clearly visible from the jury's table due to a post and a partition.

All four of the police officers who accompanied this group to the hotel for dinner and who were then providing peripheral security protection to the jury had been witnesses for the State at the trial. The testimony of two of these police officers was significant testimony involving many phases of the case. There were, however, other persons who testified for the State that they were eyewitnesses of the alleged shooting and gave somewhat conflicting accounts of the details of what had occurred. No police officer was an eyewitness of the shooting, but some of the police testimony was, nevertheless, important to the State's case.

The defense attorneys have made a formal motion for a new trial alleging that the events outlined above prejudiced the defendant's case and violated defendant's right to trial by an impartial and unbiased jury. The motion was assigned to me—rather than to the trial judge—since it was apparent that a hearing would be necessary and the hearing would involve events in which the trial judge had a part.

A special hearing was conducted before me on the matter. At the time of the hearing, the defense enlarged the grounds on which the written motion was based to include essentially the following two contentions:

1) Defendant was prejudiced because the police officers who took some part in guarding the jury at supper had been important witnesses for the State.

2) Defendant was prejudiced because the jury saw (or could have seen) the judge having dinner at a table where the four police officer witnesses were seated.

I

At the hearing the State presented essentially undisputed evidence which indicated that the jury went to the hotel in a compact group with uniformed bailiffs leading the way and bailiffs bringing up the rear. With the bailiffs was one or both of the Superior Court security officers. On a parallel sidewalk, perhaps 15 feet away, the police officers guarded the flanks without having any personal contact with the jurors.

In the dining room, the police officers ate at a large table with all the court personnel at least fifteen feet from the jurors' table. When the jurors left the table to help themselves at the self-service salad buffet table, no police officers mingled with the jurors. Instead, the chief bailiff stood informal guard near the salad table and two police officers stood informal remote guard near the exits of the grill room. Later, the judge went to the salad table with some court personnel, but not with the police officers.

Thereafter, the procession returned to the Court House in a formation similar to the formation for the trip to the hotel.

At no time did the jurors have any personal contact with the police officers, but the jurors could have observed the seating arrangements and might have noticed that the police officers were supplementing the bailiffs in guarding the jury.

The leading case on the possible violation of the constitutional rights of a defendant when persons having custody of the jury had also acted as witnesses in the case is *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). In that murder case, two deputy sheriffs were the two principal prosecution witnesses. The same deputy sheriffs were in charge of the jury which was sequestered during the entire three-day trial. They were in continuous and intimate association with the jurors for three days, eating at the same table with them, conversing with them and doing errands for them. The deputies drove the jurors to a restaurant for each meal and to their lodgings for each night. The jury convicted the defendant, and he was sentenced to death. The United States Supreme Court reversed the conviction on the grounds that the basic guarantee of the Fourteenth Amendment had been violated. In so holding the Court observed that a show of actual prejudice need be presented since "what happened in this case operated to subvert these basic guarantees of trial by jury."

See also *Bowles v. Texas,* 366 F.2d 734 (CA.5, 1966) where a new trial was denied after analysis of the testimony of the witness in question.

Many other cases dealing with situations when police officers or sheriff's deputies were witnesses and were also in charge of the jury are collected in 38 A.L.R.3d 1012.

■ The *Turner* case and the subsequent cases indicate that the areas of special concern in such cases include: the type of custodial relationship between the witness and the jury, the degree of actual contact, the duration of the relationship and the importance of the witnesses' testimony. Each of these matters must be considered in the light of the facts of the particular case.

*Type of custodial contact:* In the *Turner* case and in several other cases where a verdict was set aside, the police officers or deputy sheriffs who had testified for the State at the trial were among those actually in official immediate charge of the jury. In the case at bar, sworn bailiffs in uniform were in immediate charge of the jury and had the only personal contact with jurors. The police witnesses were at most a remote supplemental guard force in addition to those actually in charge.

*Degree of contact:* In the *Turner* case and in other cases where a verdict was set aside the police witnesses or the witnesses who were deputy sheriffs had had actual person-to-person contact with the jurors over a period of several days—conversing with them, transferring them, eating at the same table with them, doing errands for them, etc. In the case at bar, the police officers had no such contacts.

*Duration of the relationship:* In the *Turner* case, the deputy sheriffs had apparently been in close personal contact with the jurors for the entire three-day trial. A similar situation appears to have existed in other cases where a new trial has been granted. In the case at bar, the trial lasted approximately four weeks, but the jury was sequestered only after it had been charged for about 24 hours, and the police witnesses took part in guarding the jury only during a dinner recess of less than two hours.

*Importance of the testimony:* In the *Turner* case, the deputy sheriffs were not eyewitnesses, but the "principal witnesses" for the State. One of them had apprehended the defendant. They had taken defendant to the scene of the crime where the cartridge clip from the murder weapon was recovered. They testified as to damaging admissions made by defendant at the time of his apprehension and described the circumstances under which defendant was

persuaded to make a written confession. The confession was admitted into evidence. Defendant did not testify. In the case at bar, there were eyewitnesses who testified for the State, but no weapon was recovered. There was no confession, and defendant himself testified. On the other hand, the testimony of two of the police officers was of some importance to the State's case. Furthermore, one of them was the principal investigating officer and sat at the table with the prosecuting attorney during the trial.

■ After considering all of these factors, I conclude that the defendant has failed to show any prejudice to the defendant on account of the remote guarding conducted by the police witnesses. Furthermore, I find nothing inherently prejudicial about the remote and supplemental guarding which these police witnesses did in this case.

## II

■ The other issue raised under the motion concerns the allegation that prejudice inured to the defendant because the judge presiding at the trial was seen by the jury—or at least could have been seen if the jury had taken the trouble to look carefully around a partial obstruction—having dinner with a party of about twelve persons all of whom were court personnel except the four police guards who had also been witnesses in the case.

The defense supplied me an outline of the pertinent events of the trial which convinced me that two of the four police witnesses were important witnesses for the State. The actions of the police were a matter as to which there was much evidence and much argument during the trial.

It is contended that the presiding judge appeared to indicate that he favored the State's case and believed the police guards as witnesses because he had dinner at the same table with the police witnesses and in the same dining room with the jury.

No evidence was presented to indicate that the judge even conversed with any of the police officers although he may have done so. He did not sit next to them; he simply sat at the same table with them between Superior Court personnel. It was obvious to all that this was not a social gathering, but rather an arrangement to conveniently and promptly provide meals for those concerned with the trial.

It is obvious that the jury made an independent appraisal of the evidence since the State urged that it had proved defendant to be guilty of murder in the first degree and the defense contended that the fatal shot was fired by someone other than defendant. The jury, in returning a verdict of guilty of manslaughter did not adopt the "police version" of what had occurred.

During the charge which was delivered several days after the police testified and shortly before the meal in question, the judge made it clear that it was for the jury to judge the facts and he said among other things:

". . . [I]t is your exclusive province to determine the facts of the case, and to consider the credibility of the witnesses and the weight and value of their testimony. . . . The determination of the true facts and the drawing of any inferences from the facts, are matters solely within your province."

Members of the judiciary must, of course, conduct themselves so as to promote confidence in the impartiality of the judiciary. Delaware Code of Judicial Conduct Canon 2A. In Delaware the judges are not permitted to charge the jury as to matters of fact and, therefore, are not free to comment to the jury on the reliability of the evidence or to indicate that one witness is more likely than another witness to be telling the truth. Delaware Constitution, Art. IV, § 19.

The judicial conduct here involved, however, falls far short of demonstrating a violation of the judge's duties of impartiali-

ty. Here, we have nothing more than the physical presence of the judge and of police guards (who had earlier been witnesses) at the same large dining table with many other people.

Defendant was able to cite only one pertinent case in specific support of his contention on this point. See *People v. Silverman,* 252 App.Div. 149, 297 N.Y.S. 449, 476 (1937). In that case, the New York Supreme Court, Appellate Division, set aside a conviction of conspiracy entered by the Supreme Court pursuant to a jury verdict. Several errors were found to have been made by the trial court. Among the alleged errors was the fact that the trial judge had been seen at breakfast with the special assistant attorney general and his chief assistant in the same dining room with the jury after the jury had informed that judge that it had agreed on its verdict on some counts, but was still deliberating on other counts. This action was criticized by the Appellate Division in view of the further fact that the judge had earlier told the jury that he had complete confidence in the special assistant attorney general. The Appellate Division stated that "this inopportune incident is an added reason why the judgment . . . should be reversed."

I do not find the New York case to be persuasive here because it is clearly distinguishable. In the New York case, other errors had already been found to be grounds for reversal. Furthermore, the New York incident itself was far more "inopportune" than the incident before me in this case. There is no indication here that the presiding judge had said anything indicating special confidence in the police witnesses. There is no indication that he was actually socializing with these witnesses at the meal or at any other time and there was every indication the eating arrangements would have been viewed by the jury as a matter of physical convenience and not a matter of social choice.

I find no prejudice to the defendant arising from these activities of the police witnesses or of the judge during the dinner hour in question, and no violation of any of his rights, constitutional or otherwise, which would in any way justify the granting of a new trial. The motion for a new trial is denied. It is so ordered.