Larry D. RAY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Feb. 5, 1991.
Decided: Feb. 21, 1991.
Rehearing Denied March 20, 1991.

Brian J. Bartley (argued), Asst. Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr. (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice:

The defendant, Larry D. Ray ("Ray"), was convicted, following a jury trial in the Superior Court, of Unlawful Sexual Penetration in the Second Degree. Post-trial, the Court directed a judgment of acquittal on the charge of Unlawful Sexual Penetration in the Second Degree but permitted the guilty verdict to stand on the lesser included offense of Unlawful Sexual Contact in the Second Degree. Ray was thereupon sentenced to seven years in prison. In this appeal, Ray contends: (1) the trial court committed reversible error in denying his motion for a mistrial based upon the State's failure to disclose the taped statement of a co-defendant; (2) that the prosecutor improperly exhorted the jury to believe the victim's testimony; and (3) the trial court, over objection, admitted the victim's out-of-court statements under 11 *Del.C.* § 3507, in the absence of a proper foundation. We find error in the State's

discovery violation as well as in the admission of the victim's out-of-court statements and, accordingly, reverse.

## I

The facts presented at trial depicted the following events. On November 25, 1988, a five year old girl was taken to the emergency room at Saint Francis Hospital in Wilmington and diagnosed as having gonorrhea. Because gonorrhea in young children is usually caused by sexual abuse, the police became involved.

On December 13, the victim was interviewed by Detective Ruth Townsend of the Wilmington Police Department. The victim stated that she had a secret, but she was reluctant to talk to Detective Townsend about it. A few days later, the victim's aunt asked her what happened. The victim responded by stating that "Larry did it." Larry Ray, the defendant, was the boyfriend of the victim's mother and often baby-sat the victim.

Detective Townsend interviewed the victim for a second time on December 28. Using anatomically correct male and female dolls, the victim indicated to Detective Townsend that her assailant had pulled down her pants and placed his hand inside her underpants. Upon further questioning, the victim told Detective Townsend that Ray was responsible for the attack. The victim then identified Ray as her assailant in a photographic line-up. Ray was arrested on January 10, 1989 and later charged with Unlawful Sexual Penetration in the Second Degree.

Shortly before trial, on August 24, 1989, Detective Townsend again spoke with the victim. On this occasion, the victim reported that she had been sexually abused by a second individual. The victim identified her second assailant as "T" or Thomas Loat ("Loat"). Loat was Ray's cousin and occasionally visited Ray when he was baby-sitting the victim. She also stated that Ray had threatened to kill her if she told anyone what had happened.

At trial, Ray denied molesting the victim. He testified that in November, 1988, he had left the victim alone in the company of Loat. He claimed that when he returned, the victim stated that she and "T" were "doing it" and that "T" was her boyfriend.[1]

## II

Ray's first claim on appeal is that the trial court erred by denying his motion for a mistrial based upon the State's failure to disclose the taped statement of Loat who had been arrested following the victim's statement to Detective Townsend on August 24, 1989.

During an interview following his arrest on September 14, 1989, a week before trial, the police accused Loat of having sexually molested the victim together with Ray. Loat denied having any sexual contact with the victim; he did, however, admit experiencing difficulties in urination, a symptom of gonorrhea. Upon the cross-examination of Detective Townsend, Ray's counsel discovered for the first time that Loat had made a taped statement to the police and that, in fact, the police had brought the tape to trial.

Ray moved for a mistrial on the ground that the State's failure to provide him with a copy of Loat's statement was a violation of its duty to disclose discoverable information in response to the defendant's pretrial discovery request under Superior Court Criminal Rule 16(a).[2] The trial court de-

---

1. On April 9, 1990, Loat pled guilty to Unlawful Sexual Contact in the Second Degree as a result of his molestation of the victim.

2. Rule 16(a) provides:
   **(a) Defendant's Statements; Reports of Examinations and Tests: Defendant's Grand Jury Testimony.** The defendant may serve upon the Attorney General a request to permit the defendant or someone acting in his behalf to inspect and copy or photograph any rele-

vant (1) written or recorded statements or confessions made by the defendant, or a co-defendant (whether or not charged as a principal, accomplice or accessory in the same or in a separate proceeding), or copies thereof, and the substance of any oral statement which the State intends to offer in evidence at trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a state agent which are known by the Attor-

nied this motion but instructed the jury to ignore Detective Townsend's statements concerning Loat's admission. Ray's counsel was then permitted to listen to the tape of Loat's interview and it was later played for the jury. Ray contends that the State's concealment of Loat's tape recorded statement constituted reversible error. We agree.

Superior Court Criminal Rule 16(a) provides, *inter alia,* that a defendant is entitled to any relevant, written, or recorded statements made by the defendant or a codefendant. The State's duty under Rule 16 to disclose relevant information to the defendant is a continuing one. *See Skinner v. State,* Del.Supr., 575 A.2d 1108, 1125 (1990).

■ Rule 16(a) defines a codefendant as one who was charged as a principal, accomplice or accessory in the same or a different proceeding. Rule 16 is designed to be interpreted broadly. *See Skinner,* 575 A.2d at 1125. Superior Court Criminal Rule 16 is based on Federal Rule 16, although the latter makes no reference to codefendants. Thus, Delaware's Rule 16 was designed to bestow upon the defendant a broader scope of discovery than its Federal counterpart. *Id.* The State argues that because there is no conclusive evidence that Ray and Loat acted in concert, they were not codefendants and it thus had no duty to disclose Loat's statement to Ray. We find this argument unpersuasive in view of the actions of the police who had arrested Loat a week before trial and accused him of participating with Ray in molesting the victim. Moreover, Detective Townsend attached such significance to Loat's statement that she brought the taped statement to Ray's trial without submitting it for transcription because processing might delay its availability for trial.

Unfortunately, the officer failed to notify the prosecutor before trial that Loat's statement had been obtained.

Superior Court Criminal Rule 16(f) imposes upon the State a continuing duty to disclose relevant material which it has in its control.[3] *Skinner,* 575 A.2d at 1126. This duty begins when the request is made and extends through trial. Where, as here, the State discovers relevant material shortly before or during trial, this material, like that discovered during the early stages of investigation, must be disclosed to the defendant.

■ The trial court has several remedies for violation of Rule 16 during trial: it can order a continuance, it can prevent the introduction of the material or it can impose any other order it "deems just." Discovery violations which the trial court fails to correct are subject to review by this Court and will be subject to reversal if substantial rights of the accused are prejudicially affected. *Id.; Johnson v. State,* Del.Supr., 550 A.2d 903, 913 (1988).

In our most recent pronouncement on the effect of Rule 16 violations, *Skinner,* we applied the three-prong test for prosecutorial misconduct first set out in *Hughes v. State,* Del.Supr., 437 A.2d 559, 571 (1981). This test imposes upon the Court a duty to examine "(1) the centrality of the error to the case, (2) the closeness of the case, and (3) the steps taken by the court to mitigate the results of the error." *Skinner,* 575 A.2d at 1126.

■ Applying this test to the facts before us, we find that Ray's conviction must be reversed. Loat's statement which the State withheld was central to Ray's defense. Loat told the police of a physical problem symptomatic of gonorrhea, the

ney General to be within the possession, custody or control of the State, (2) written reports of autopsies, ballistics tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, and written reports of physical or mental examination of the defendant or the alleged victim by a physician, dentist or psychologist made in connection with the particular case, or copies thereof, which are known by the Attorney General to be within

the possession, custody, or control of the State, and (3) recorded testimony of the defendant before a grand jury.

3. Statements in the possession of the police are deemed to be within the control of the State and the State has a continuing duty to determine whether the police have secured additional discoverable material. *Johnson v. State,* Del.Supr., 550 A.2d 903, 911, n. 6 (1988).

same incriminating condition which the State used against Ray. This information was obviously material to Ray's defense and its disclosure prior to trial could have influenced Ray's trial tactics. Moreover, this case was close as evidenced by the trial judge's decision to grant an acquittal on the charge of Unlawful Sexual Penetration in the Second Degree and direct a judgment of guilt as to the lesser included charge of Unlawful Sexual Contact in the Second Degree. Finally, we conclude that the trial judge's instructions to the jury were insufficient to mitigate the error, nor did subsequently playing the tape to the jury by the defendant reduce the prejudicial effect of its pretrial unavailability.

The discovery procedures contained in Rule 16 are an essential element of the accused's effort to defend himself and obtain a fair trial. Unfortunately, too often this Court has found it necessary to reverse convictions because of the State's failure to comply with the clear requirements of discovery, particularly as it applies to information in the hands of the police who are acting as agents of the State. *Johnson v. State,* 550 A.2d at 913; *Skinner v. State,* 575 A.2d at 1127; *Goodwin v. State,* Del.Supr., No. 267, 1988, Holland, J. (Dec. 20, 1989) [571 A.2d 786 (table)] (ORDER). The State's decision to withhold Loat's statement presents another instance in which the State has limited a defendant's ability to prepare his defense. Such dereliction cannot be deemed harmless under the circumstances of this case and we have no option except to reverse Ray's conviction and remand for a new trial.

### III

Although our reversal on defendant's discovery violation claim requires remand for a new trial, we address his two remaining claims of error for the guidance of the trial court in the event of further proceedings.

■ Ray also claims that the State infringed his right to a fair trial by telling the jury that the victim would suffer a harm greater than that caused by the sexual assault if the jury did not demonstrate its belief in the victim's testimony by convicting the defendant. Under the circumstances here, we find no reversible error.

In his rebuttal summation, the prosecutor stated:

Harm? It's in her mind. We know that. And can we erase it? Can anybody erase what [the victim] has been through? The State submits not. Is it irreparable harm? Who knows? But what is worse than the harm she endured is the harm if we don't believe her.

The State submits that the defendant did in fact commit a crime and the State looks forward to your verdict. Thank you.

Ray failed to object to this statement at trial. As part of his general instructions, the trial judge instructed the jury:

You are officers of the Court, and you must therefore act impartially. Throughout your deliberations, you may not be influenced by passion, prejudice, sympathy, the consequences of a verdict, or any motive except a desire to declare the proper verdict upon the evidence and the law.

A further word about sympathy. The Court does not charge you not to sympathize with a complaining witness because it is only natural and human to sympathize with a person of such tender years who is involved in litigation. But the Court does charge you not to allow that sympathy to enter into the consideration of the case or to influence your verdict.

After the jury had retired to deliberate, defense counsel expressed concern over the comments made by the State. When the jury returned with its verdict of guilty, Ray's counsel immediately objected to the statement made by the State in its rebuttal summation and asked for a "mistrial." The judge denied this motion on the ground that his sympathy instruction had cured any prejudice.[4]

---

4. Ray also failed to object to the statement in his post-trial motion for acquittal.

This Court has, on repeated occasion, emphasized the fact that a defendant who fails to object contemporaneously to an improper statement made in a closing argument waives the right to raise the issue on appeal. *Weber v. State*, Del.Supr., 547 A.2d 948, 960 (1988); Supr.Ct.R. 8. Thus, Ray's failure to object to the prosecutor's statement requires us to apply a plain error standard. *Wainwright v. State*, Del.Supr., 504 A.2d 1096 (1986).

The prosecutor's remarks were inappropriate. The psychological condition of the victim was not a central issue in this case. Ray was charged with Unlawful Sexual Penetration in the Second Degree and neither physical nor mental harm is a required element of that offense. However, in the absence of a contemporaneous objection coupled with the sympathy instruction given by the trial judge, which mitigated any prejudice that might have resulted from the prosecutor's comment, we find no reversible error. The trial judge specifically advised the jury that it should not be influenced by sympathy or the consequences of the verdict. Under a plain error standard of review, there was no clear prejudice to the defendant's substantial rights to a fair trial resulting from the prosecutor's comments. *Wainwright*, 504 A.2d at 1100.

## IV

■ Ray's final claim on appeal is that the admission of testimony concerning the victim's out-of-court statements constituted reversible error because the evidence did not qualify for admissibility pursuant to 11 *Del.C.* § 3507.[5] During trial, the trial court admitted into evidence the prior out-of-court statements made by the victim to her aunt and Detective Townsend implicating Ray as her assailant. Over objection, the trial court ruled that these statements,

although hearsay, were admissible under section 3507.

On direct examination, the victim declined to respond to the prosecutor's request that she tell the jury what Ray did to her. The victim testified that she told her aunt and Detective Townsend what happened to her, but she declined to testify about what she told them. The State was, however, able to get the victim to testify that she told the truth on these two separate occasions. Ray argues that the admission of these statements was in error because section 3507 requires the State to elicit testimony from the victim on direct examination as to the contents of her out-of-court statements and whether those statements were true. *See Johnson v. State*, Del.Supr., 338 A.2d 124, 126–27 (1975).

In *Keys v. State*, Del.Supr., 337 A.2d 18, 20 n. 1 (1975), this Court stated that: "In order to offer the out-of-court statement of a witness, the statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself." Thus, a witness' statement may be introduced only if the two-part foundation is first established: the witness testifies about both the events and whether or not they are true. Finally, in order to conform to the Sixth Amendment's guarantee of an accused's right to confront witnesses against him, the victim must also be subject to cross-examination on the content of the statement as well as its truthfulness. *Johnson v. State*, 338 A.2d at 127.

In the present case, the victim testified that her statement was truthful, and she also was subject to cross-examination. However, she refused to testify about the

---

5. **§ 3507. Use of prior statements as affirmative evidence.**

    (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

    (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior

statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

    (c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are codefendants in the same trial. This section shall also not apply to the statements of those whom to cross-examine would be to subject to possible self-incrimination.

events she perceived. The admission of out-of-court statements is inextricably linked to the witness' ability to at least "touch on the events perceived." *See Id.* We find that it was reversible error to admit the out-of-court statements of the victim in view of the limited foundation presented.

The State argues that the inability of a witness to verify the content of an out-of-court statement should not bar admission if such inability is attributable to loss of memory or the age of the child, as occurred in *Tucker v. State*, Del.Supr., 564 A.2d 1110 (1989). In *Tucker*, this Court sanctioned the admissibility of certain statements of a nine year old child in the face of a plain error claim under the confrontation clause, despite the child's difficulty in recounting certain events. The admissibility of the child's out-of-court statements in that case, however, was based on waiver or express consent by the defendant at trial. Our refusal to find plain error of a constitutional dimension in *Tucker* is not to be considered precedent for the admissibility of statements lacking content verification in the face of contemporaneous objection.

We recognize the difficulty involved in the presentation of the testimony of small children, particularly in sexual abuse cases. *Wheat v. State*, Del.Supr., 527 A.2d 269, 275 (1987). We have also ruled that there need not be consistency between the in-court testimony of the witness and the prior out-of-court statement. *Johnson v. State*, Del.Supr., 338 A.2d 124, 127 (1975). But the use of hearsay statements under section 3507 must be carefully circumscribed in order to avoid, as occurred here, the only direct evidence concerning the commission of the offense against a child being presented through the testimony of third parties relating what the victim stated on a prior occasion. The statute becomes meaningless if there is no opportunity to test the truth of the statements offered.

We conclude that the hearsay statements of the victim in this case were presented by her aunt and Detective Townsend without the benefit of an appropriate foundation.

Accordingly, they should not have been admitted under section 3507.

The judgment of the Superior Court is REVERSED and this case REMANDED for a new trial consistent with this decision.