**Abraham FELEKE, Defendant-below, Appellant,**

v.

**STATE of Delaware, Plaintiff-below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 20, 1992.
Decided Feb. 5, 1993.

Raymond M. Radulski (argued), Asst. Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr. (argued), and Peter N. Letang, Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., constituting the Court *en Banc*.

VEASEY, Chief Justice:

The principal issue which this case presents for decision is the proper application of 11 *Del.C.* § 3507 and the trial court's discretion in admitting out-of-court statements of a child alleged to be the victim of sexual molestation. Related issues concerning the competency of a child to testify and the constitutional guarantee to the right of confrontation are also implicated. We conclude that the trial judge did not abuse his discretion, and that the conviction does not suffer from a constitutional infirmity. Accordingly, we affirm.

### FACTS

Following a jury trial in the Superior Court, in and for New Castle County, the defendant/appellant, Abraham Feleke ("Feleke") was convicted of two counts of Unlawful Sexual Intercourse in the First Degree, 11 *Del.C.* § 775, one count of Unlawful Sexual Penetration in the Third Degree, 11 *Del.C.* § 770, and one Count of Unlawful Sexual Contact in the Second Degree, 11 *Del.C.* § 768. Feleke was sentenced to a term of fifteen years' mandatory imprisonment for each count of Unlawful Sexual Intercourse in the First Degree, to a term of fifteen months' imprisonment for the count of Unlawful Sexual Penetration in the Third Degree and to a term of two years' imprisonment for the count of Unlawful Sexual Contact in the Second Degree.[1] The alleged victim of these crimes was Feleke's nine-year-old daughter (the "daughter" or the "child").

Feleke, an Ethiopian national, was a Ph.D. candidate at the University of Dela-ware where he studied molecular and atomic physics since 1985. Although he initially came to this country by himself, his wife, Seblewongel (the "Mother"), joined him one year later. Their three children remained in Ethiopia until December of 1990 when the daughter arrived in Delaware to live with her parents who were then experiencing marital difficulty. By January of 1991 the couple was divorced in accordance with Ethiopian custom but continued to live together in their one-bedroom apartment for financial reasons. During this time Feleke's relationship with his daughter was also strained, and he showed little interest in her. At some unspecified time prior to Feleke's arrest, the Mother noted that his attitude toward the daughter had changed as he unexpectedly began to play and laugh with the girl.

Approximately six months after the daughter moved in with her parents the events which form the basis of this appeal began to unfold. On May 28, 1991, the Mother worked her regular day shift at McDonald's while the daughter attended school. Both returned to the apartment around 4 p.m. and the Mother prepared dinner. The daughter, however, refused to eat and ran to her bedroom crying when her mother asked her what was wrong. After repeated questioning, the daughter told her mother that Feleke had sexual intercourse with her on the previous day. The daughter was home from school the day of the attack because of the Memorial Day holiday.

Upon learning the details of the events of May 27, the Mother immediately took the daughter to the McDonald's where the Mother was employed and summoned the police. Newark Police officers responded to the restaurant and interviewed only the Mother because the daughter neither spoke nor understood English. The two were then taken to the police station where a detective interviewed the daughter. Because of the child's inability to speak English, it was necessary for the detective to use the Mother as an interpreter during the

---

1. The two year prison term for Unlawful Sexual Contact in the Second Degree was to be suspended after six months for one year and six months at level III.

first taped interview. According to the Mother, the daughter stated that she was in the living room dressed in a nightgown when Feleke told her to go into the bedroom; he then placed the child on the bed and told her that he was going to make love to her and that he did not want to hurt her; he took off his pants, used his fingers to penetrate the daughter's vaginal opening, and used some type of oil to perform vaginal intercourse with the child.

After the interview, the daughter was taken to the Christiana Medical Center where she was examined by a doctor. The examination uncovered no evidence of "bruising or other lacerations or wounds of the legs or around the area of the vagina, the vulva, or the entrance to the vagina." Similarly, the child tested negative for semen.[2] The likelihood of finding semen in the daughter's vagina was significantly reduced since she bathed after the assault. A digital examination of the child's vagina was also performed to check for any internal abnormalities, deformities or tenderness. The doctor stated that "I felt that there was an abnormally little amount of resistance on inserting a digit...." The doctor further testified that he was also unable to find a hymenal ring in place. Finally, when the doctor gave the child anatomically correct dolls and asked her what happened, she placed the female doll on it's back and the male doll, with knees bent behind, on top of the female doll.

On or about June 13, 1991, the daughter gave the police a second tape-recorded statement. The second interview was conducted outside the presence of the Mother using a translator from the Philadelphia Nationalities Service Agency.[3] The allegations made by the daughter during this interview were similar to those made by the Mother during the first interview. The second account, however, was more detailed. Moreover, during the second interview the daughter also stated that she had been sexually abused by Feleke several times prior to May 27. She, nevertheless, did not tell her mother what he did to her after he apparently promised to buy her underwear if she remained quiet.

Feleke went to trial on September 25, 1991, approximately four months after the alleged incident of May 27, 1991. During the trial the daughter was called to the stand to testify in English without the aid of an interpreter.[4] Because of the child's limited command of the English language, it was necessary to use leading questions throughout both the direct and cross-examinations. Nevertheless, despite the language barrier, the daughter was able to affirm that Feleke "did something bad" to her. When asked on direct, "Who did something bad to you," the daughter replied, "It was him," while indicating toward the defense table. Following up on her response, the daughter again was asked on direct if she could tell who it was that did something bad to her. She twice replied that it was Abraham (Feleke).

The child's testimony, however, was not entirely consistent. During a later portion of the direct examination, she shook her head negatively when asked whether the bad thing that happened to her involved "bad touching on [her] body." In addition to being unable to describe what had happened to her, she was also unable to demonstrate, at trial, the "bad things" that were done to her when she was given a set of anatomically correct dolls. Finally, when on cross-examination she was asked whether she knew the difference between

---

**2.** A microscopic examination of slides prepared from vaginal swabbings disclosed an abnormal collection of small beads of oil. An infrared spectroscopic analysis of the beads indicates that they are likely beads of natural oil found on/in human skin.

**3.** Feleke alleges that the translator might have known the victim's mother and was thus biased against him. The translator, however, denied knowing anyone related to the case. Additionally, the jury was aware of the allegations and

was thus able to weigh her credibility accordingly.

**4.** It is to be noted that, when questioned shortly after the May 27 incident, the daughter's command of English was insufficient to permit her to communicate with the police and the Mother operated as an "interpreter." The second interview was through a professional translator on June 13, outside the presence of the Mother.

the truth and a lie, the child indicated that she knew when a story was made up and when a story was true.

Using the daughter's testimony as a foundation, the State then sought to introduce her two out-of-court taped statements into evidence pursuant to 11 *Del.C.* § 3507. The defense objected to the admission of the tapes based upon hearsay, foundation, lack of confrontation, lack of opportunity to cross-examine the declarant and lack of competency. The trial judge ruled that the child was competent to testify and that the tapes were admissible. Feleke renewed his objection to the admission of the tapes after the translator testified that her translation of the daughter's statement was not verbatim. The objection was overruled.

## ISSUES ON APPEAL

The issues raised by this appeal are three-fold: (1) whether the trial judge committed error in finding the child witness to be competent to testify; (2) whether the admission of the child's out-of-court taped statements violated the foundational requirements of 11 *Del.C.* § 3507,[5] and (3) whether the defendant's constitutional rights were violated, including his right to confrontation under both the Sixth Amendment of the United States Constitution and Article I, section 7 of the Delaware Constitution, and the prohibition of Article IV, section 19 against judges charging juries with respect to matters of fact.

We find the trial judge did not abuse his discretion in finding the child witness competent to testify and in admitting into evidence two out-of-court statements pursuant to 11 *Del.C.* § 3507. Further, we do not find that the defendant's rights under either the United States Constitution or the Delaware Constitution were violated.

■ First, the trial judge did not abuse his discretion in finding that the daughter

was competent to testify under Delaware's flexible competency rules given the fact that she stated she knew when a story was made up and when a story was true. Second, the two out-of-court, tape-recorded statements were admitted only after the declarant, the child witness, testified as to their truthfulness and "touched on" the events perceived in accordance with the foundational requirements of 11 *Del.C.* § 3507.[6] Third, the Confrontation Clause in both the Federal and Delaware Constitutions guarantee only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense may wish. Since the defense was given a full and fair opportunity to probe and expose any infirmities in the child's testimony, no Confrontation Clause violation occurred. Finally, while the trial judge's recitation of what the child indicated by way of gesture may have been error, the error is harmless.

## THE COMPETENCY ISSUE

Delaware Rule of Evidence ("D.R.E.") 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." Further, 10 *Del.C.* § 4302 provides:

> **§ 4302. Competency to testify.**
> No child under the age of 10 years may be excluded from giving testimony for the sole reason that such child does not understand the obligation of an oath. Such child's age and degree of understanding of the obligation of an oath may be considered by the trier of fact in judging the child's credibility.

D.R.E. 601 adopts the position that "almost anyone is competent to testify, letting the concerns of mental or moral capacity go to the issues of credibility or weight given to the evidence." *Ricketts v. State,* Del. Supr., 488 A.2d 856, 857 (1985). D.R.E. 603

**5.** The standard and scope of review applicable to these two issues is whether the trial judge abused his discretion in admitting the victim's two out-of-court taped statements. *Smith v. State,* Del.Supr., 560 A.2d 1004 (1989) (absent an abuse of discretion this Court will not disturb evidentiary rulings). The constitutional issues

involve matters of law which this Court reviews *de novo. Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927 (1982).

**6.** As noted below, the term "touched on" is a key element for purposes of 11 *Del.C.* § 3507. *Ray v. State,* Del.Supr., 587 A.2d 439, 444 (1991).

further provides that "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." Recognizing the unique challenges posed by child witnesses, this Court has held that D.R.E. 603 was designed to provide the flexibility that is required in dealing with children. *Ricketts*, 488 A.2d at 857.

In the case of *Ricketts v. State*, a six-year-old rape victim was held to be competent to testify after she promised not to tell a lie and to tell the truth about everything that was asked of her in court. Although the daughter, the nine-year-old alleged rape victim in the present case, did not make such a promise, the flexibility of the competency rules, especially with regard to children, supports the trial judge's conclusion that she is competent to testify in this case. The daughter here did not have a strong command of the English language, unlike the child witness in *Ricketts*. Yet, despite the fact that she did not initially understand questions regarding the difference between telling the truth and telling a lie, she nevertheless stated that she knew when a story was made up or when it was true. Moreover, when asked whether anybody told her what to say, the daughter

responded, "I told ... what happened to me." [7] Although the daughter's responses were not entirely clear or consistent and her ability to understand and express herself in English was impaired, the trial judge could properly have determined, in his discretion within the flexibility of the competency rules, that she was competent to testify. We defer to the discretion of the trial judge who observed the witness, there being some testimony in the record to satisfy the flexible provisions of D.R.E. 603 which are consistent with 10 *Del.C.* § 4302.[8] A child's age and degree of understanding of the obligation of an oath, however, may be considered by the trier of fact in judging the child's credibility. *Id.* Consequently, any concerns regarding the daughter's mental or moral capacity in this case go to her credibility and the weight her testimony should be afforded.

## ADMISSIBILITY OF THE OUT-OF-COURT STATEMENTS

■ In the case of *Ray v. State*, Del. Supr., 587 A.2d 439 (1991), this Court held that a two-part foundation must be established before a witness's out-of-court statement may be offered into evidence pursuant to 11 *Del.C.* § 3507 ("§ 3507").[9] First, the witness must testify as to the truthful-

---

**7.** As noted above (n. 4), one may well be skeptical concerning the child witness's command of English at the trial which was held in late September, since she was apparently unable to communicate in English in late May and early June, shortly after the incident occurred. These are, however, issues for the trial judge to consider in his discretion as to admissibility, and for the jury to evaluate as to weight and credibility.

**8.** Following this Court's ruling in the case of *Ricketts v. State*, the Delaware General Assembly enacted 10 *Del.C.* § 4302 ("Section 4302"). 65 Del.Laws c. 111, § 1. "When a legislature enacts a provision, it has available all the other provisions relating to the same subject matter whether in the same statute or in a separate act." Norman J. Singer, *Sutherland Statutory Construction* § 51.01 (5th Ed.1991). D.R.E. 603, *Ricketts* and Section 4302 simultaneously apply to the same situation. "It is assumed that when the General Assembly enacts a later statute in an area covered by a prior statute, it has in mind the prior statute and therefore statutes on the same subject must be construed together so that effect is given to every provision...."

*Green v. County Council of Sussex County*, Del. Ch., 415 A.2d 481, 484 (1980), *aff'd, Carl M. Freeman Associates, Inc. v. Green*, Del.Supr., 447 A.2d 1179 (1982).

**9.** § 3507. *Use of prior statements as affirmative evidence.*

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

(c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are codefendants in the same trial. This section shall also not apply to the statements of those whom to cross-examine would be to subject to possible self-incrimination.

ness of the statement. Second, the witness must testify as to the events perceived or heard. *Ray*, 587 A.2d at 443. "The admission of out-of-court statements is inextricably linked to the witness' ability to at least 'touch on the events perceived.' " *Id.* at 444. *See Keys v. State*, Del.Supr., 337 A.2d 18 (1975) (before declarant's prior statement is qualified for admission under § 3507, declarant must first be called as an in-court witness and be questioned on direct examination and subject to cross-examination). The admission of hearsay statements under § 3507 must be carefully confined to cases where an appropriate foundation is established, thus avoiding situations in which the *only* direct evidence concerning the commission of an offense is presented through third parties reciting what the victim stated on a prior occasion. 587 A.2d at 444.

■ In the present case the State successfully offered two prior recorded out-of-court statements into evidence. Pursuant to § 3507, the child took the stand to verify the content of the out-of-court statements. In complying with the first prong of the two-part foundation, she testified as to the truthfulness of the statements despite her age and difficulty with the English language. When asked, "Did anybody tell you what to say to [the detective], or did you tell her what really happened to you," the daughter responded, "I told her what happened to me." Consequently, although the child's testimony could have been more detailed, it was within the discretion of the trial judge to have found that her response touched on the events, thus minimally satisfying the first part of the § 3507 foundation.

Similarly, while the daughter's testimony was chiefly the product of direct examination and was somewhat disjointed, the trial judge could properly have found that the second foundational requirement was satisfied by her testimony as to the events she perceived. The daughter testified that Feleke did something bad to her that involved touching. The relevant portions of the daughter's direct testimony are as follows:

By Mr. Letang:

Q. Let me ask you just a couple of questions about something bad that happened to you. Can you tell me who it was who did something bad to you?

A. Yeah.

Q. Who did something bad to you?

A. It was him.

Mr. Letang: Okay. The record should reflect that the witness indicated toward defense counsel table.

Q. Could you tell me who it was that did something bad to you? Who was it?

A. It was Abraham.

Q. Can you say that again, loudly?

A. Abraham.

Q. Abraham. Is he your father?

A. (Witness nodded head affirmatively.)

Mr. Letang: And the record should also reflect the witness said yes.

Later in the direct examination the following exchange occurred between the prosecutor and the child.

Q. What bad happened to you? We're almost done. Can I ask you a question, another question? Maybe this is a little bit easier. Did it involve touching, the bad things that happened to you?

A. Huh?

Q. Did it—was it touching, the bad thing that happened to you?

A. (Witness nodded head affirmatively.)

Although this record is not entirely consistent or clear, the issue is not how an appellate court would evaluate the reliability of the witness's testimony. The issue is whether the trial judge could, in the exercise of his discretion, have found that the daughter "at least 'touch[ed] on the events perceived' " in compliance with the foundational requirements of § 3507 as enunciated in *Ray v. State*, 587 A.2d at 444. We find no abuse of that discretion.

## CONFRONTATION RIGHTS

■ The Confrontation Clauses of both

the Sixth Amendment[10] of the United States Constitution and Article I, section 7 of the Delaware Constitution[11] give the accused the right to confront adverse witnesses. The clause, however, "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *U.S. v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (emphasis in original) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987)). Moreover, in *Tucker v. State*, Del.Supr., 564 A.2d 1110 (1989), this Court noted that the Confrontation Clause is "not . . . an absolute guarantee of the right to cross-examine, but rather [is] an 'availability rule—that requires the production of a witness when he is available to testify.'" *Id.* at 1123 (quoting *Burke v. State*, Del.Supr., 484 A.2d 490, 495 (1989)). Consistent with these constitutional tenets, this Court has held that, while § 3507 requires that the out-of-court declarant be subject to cross-examination, "it does not expressly require any specific quality of cross-examination or key the admission of the out-of-court statement to any particular recall in court on the part of the witness."[12] *Johnson v. State*, Del.Supr., 338 A.2d 124, 127 (1975).

In the present case, the daughter was subject to both direct and cross-examination. The defense even recalled her after her tape-recorded statements were played for the jury. Consequently, despite Feleke's dissatisfaction with the cross-examination, the Confrontation Clause is satisfied because "the defense [was] given a full and fair opportunity to probe and expose [any] infirmities through cross-examination. . . ."[13] *Delaware v. Fensterer*, 474

U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985).

## TRIAL JUDGE'S COMMENTS REGARDING EVIDENCE

The Delaware Constitution prohibits trial judges from commenting upon evidence offered at trial. *Wright v. State*, Del.Supr., 405 A.2d 685, 689 (1979). Article IV, section 19 ("Section 19") specifically provides that "[j]udges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law." Feleke asserts that the trial judge improperly commented upon evidence when he attempted to interpret the daughter's affirmative gesture which was made in response to the question, "Do you know the difference between the truth and a lie, or a fib? You know what a lie is?" After viewing what Feleke himself refers to as an "affirmative gesture" made by the child, the judge stated, "She answered yes, that she knows what a lie is." While the comment was technically improper under Section 19, the comment constitutes harmless error, because it appears to be conceded that the witness's action was an affirmative gesture, and because the trial judge did not comment on the reliability of the evidence itself.

Moreover, Delaware case law does not support Feleke's contention. For example, in the case of *Wright v. State*, "[t]he Trial Judge repeatedly told the defendant that he was 'wasting time,' and instructed him to 'move along.'" *Wright*, 405 A.2d at 689. Additionally, although the defendant repeatedly attempted to submit evidence concerning his billing dispute, the judge refused to allow the evidence to go to the

---

**10.** U.S. Const. amendment VI:
In all criminal prosecutions, the accused shall enjoy the right—to be confronted with the witnesses against him. . . .

**11.** Del. Const. art. I, § 7:
Procedural rights in criminal prosecutions; jury trial; self-incrimination; deprivation of life, liberty or property.
Section 7. In all criminal prosecutions, the accused hath a right to—meet the witnesses in their examination face to face. . . .

**12.** Section 3507 was drafted, in part, to deal with the problem of turncoat witnesses who are unable to recall events on the witness stand after having previously described them out of court. Consequently, § 3507 statements are admissible on the basis of limited recall. *Johnson v. State*, Del.Supr., 338 A.2d 124, 127 (1975).

**13.** The defense neither obtained its own translator nor made use of the State's translator who was available during the trial.

jury stating that it had nothing to do with the case. The judge further addressed the attorney exclaiming, "I am going to tell you its law you don't understand." *Id.* In applying Section 19 to *Wright,* this Court held that the judge improperly commented upon the evidence. The Court further admonished trial judges to avoid undue impatience, irritation and sarcasm. *Id.* Similarly, in the case of *State v. Bailey,* Del.Super., 352 A.2d 415 (1976), the Superior Court relied upon Section 19 in holding that judges are not free to comment on the reliability of witnesses or evidence. *Id.* at 419. In the present case, the trial judge did not directly comment upon the evidence in terms of its reliability or merit. While the judge's action may have been error, it was harmless error in that he simply recited what the witness indicated by way of a gesture that even Feleke admits to be an "affirmative gesture."

The judgment of the Superior Court is AFFIRMED.