### The ESTATE OF Constance SWAN, Plaintiff Below, Appellant,

### v.

### Alexander D. BALAN, M.D., Individually, and Alexander D. Balan, M.D., P.A., a Delaware Corporation, Defendants Below, Appellees.

### No. 658, 2007.

Supreme Court of Delaware.

Submitted: July 16, 2008.

Decided: Sept. 9, 2008.

---

23. *Id.* at *8.

Randall E. Robbins, Esquire, of Ashby & Geddes, Wilmington, DE, for appellant.

John D. Balaguer, Esquire and William L. Doerler, Esquire, of White and Williams, LLP, Wilmington, DE, for appellees.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this medical malpractice action, a jury found that the doctor was negligent, but that his negligence was not a proximate cause of the patient's injury. Appellant seeks a new trial, arguing that opposing counsel's improper comments during closing argument were unduly prejudicial and that the verdict was against the great weight of the evidence. Because the trial court acted within its discretion in addressing appellant's objections to the closing argument, and because there is adequate record support for the jury's verdict, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Alexander Balan began treating Constance Swan for breast cancer in 1988. At that time, he performed a partial mastectomy on her right breast after a biopsy revealed in situ cancer. Swan also underwent radiation therapy. Over the next 15 years, Balan performed numerous additional biopsies of both of Swan's breasts. In 1998, after finding another cancerous mass, he performed a partial mastectomy on her left breast. Swan again underwent radiation therapy.

In 2003, Swan returned to Balan for treatment of a small lump in her left breast. A mammogram showed a 7 mm cyst in a 1.9 cm "complex of tissue." The cyst was in an area that had been extensively radiated in connection with Swan's prior breast cancer treatment. There also was scarring in the area from a prior partial mastectomy. Balan detected a "no-

dular" area near the cyst and decided to do a biopsy to rule out cancer.

Instead of performing a standard biopsy, by taking a small sample of tissue for analysis, Balan performed a wide resection, which is similar to a partial mastectomy. Balan explained that he thought there might be a recurrence of cancer, and, "[i]f so, then [he does] not need to do a biopsy but [can do] a one-sitting surgery and excise at the same time to provide a cure." Subsequent testing revealed that the tissue was not cancerous, but it was not healthy either. The tissue showed signs of damage from Swan's prior radiation.

A small portion of the incision did not heal properly after surgery. Swan visited Balan numerous times as the wound became inflamed and then turned black. Balan prescribed antibiotics to treat a possible bacterial infection, but did not culture the wound to determine if there was a fungal infection. Eventually, Swan sought a second opinion. Dr. Diana Dickson–Witmer recommended "tram flap" surgery to close the wound. She thought that Swan's breast tissue was necrotic and also suspected an infection. Dickson–Witmer referred Swan to Dr. J. Joseph Danyo, a plastic surgeon who agreed with Dickson–Witmer's assessment. Danyo performed a deep culture of the wound, which revealed an aspergillus infection. Danyo referred Swan to Dr. Wesley W. Emmons, an infectious disease specialist, who treated the aspergillus infection.

Swan then underwent the tram flap surgery to close the wound. That procedure involved the removal of Swan's entire breast, as well as part of her chest wall, and the relocation of muscle from her abdomen to her chest. Swan spent more than a year in recovery after the surgery.

Swan sued Balan for medical malpractice on March 22, 2005. After she died in 2006 of metastatic breast cancer, her estate continued the suit. The parties stipulated that Swan's death was unrelated to Balan's treatment. At trial, there was expert testimony that Balan was negligent in performing a wide resection rather than a biopsy. Even Balan acknowledged that, if Swan had recurrent breast cancer, the proper treatment would have been a complete mastectomy, not the wide resection that he performed. The experts disagreed, however, about whether Balan properly treated Swan's wound and whether Swan developed the aspergillus infection as a result of his treatment. Balan's experts testified that the healing complications were caused by tissue necrosis from Swan's earlier radiation, and that neither the size of the wound or the aspergillus infection contributed to the healing difficulty. The jury concluded that Balan was negligent, but that his negligence did not cause Swan's injuries. The jury was not asked to identify what conduct it found to be negligent. The trial court denied Swan's motion for a new trial, and this appeal followed.

### DISCUSSION

Swan first complains that Balan made several improper comments during his closing argument:

(1) "[A]s Miss Swan's lawyer and now the lawyer for the estate, Mr. Robbins could talk to Dr. Dickson–Witmer whenever he wanted. He's authorized to do that, I'm not."

(2) "If that was really true [referring to the radiologists concerns], don't you think Mr. Robbins would have brought that radiologist in to tell you that? This case probably would be over if he did that. What does it suggest to you that the radiologist isn't here testifying when the plaintiffs have the burden of proof?"

(3) "And you saw—Mr. Robbins even mentioned it in his remarks. He brought in this giant textbook, *Mandell's Infectious Disease,* thousands of pages here. If there was anything in there about if you give antibiotics empirically you're going to make somebody more likely to get aspergillus, don't you think he would have read that and confronted Dr. Bacon with it?".

(4) "Why was that added later [referring to expert's report that the size of the biopsy was a concern]? What does that say about what Mr. Robbins and Dr. Reiner felt about the strength of these opinions if they felt they had to add on something new to strengthen their case?" and

(5) "[E]ither Dr. Balan assessed this wound reasonably and within the standard of care, or Dr. Grubbs, Dr. Dickson–Witmer, and Dr. Danyo were negligent, too, because they didn't culture it."

At trial, Swan's counsel objected to the first two comments, but did not raise any concerns about the others. The trial court instructed the jury to disregard the comment about Swan's counsel being able to meet with Dickson–Witmer. But the trial court did not think a curative instruction was needed to address Balan's comment about the radiologist. Instead the court suggested that Swan respond to that comment in her rebuttal argument.

■ We review the trial court's rulings on the first two comments for abuse of discretion. The remaining comments are reviewed for plain error, because Swan did not object to them at trial.[1] It is settled law that, "[a]ny effort to mislead the jury or appeal to its bias or prejudice is inappropriate and, where objection is made, the trial court is obliged to act firmly with curative instructions ...."[2] When evaluating the impact of allegedly improper comments, courts must consider three factors: 1) the closeness of the case; 2) the centrality of the issue; and 3) the steps, if any, taken in mitigation.[3]

■ The trial court agreed with Swan that this was a close case. But the comments about Dickson–Witmer and the radiologist did not address central issues. As the trial court noted, it was irrelevant whether Swan's counsel could have talked to Dickson–Witmer whenever counsel wanted. That fact, whether correct or not, did not affect the validity of Swan's claim. The radiologist comment, likewise, was not central to the case. The radiologist, if called as a witness, would have testified about standard of care—the propriety of performing a biopsy and the amount of breast tissue that needed to be examined. But the jury found in Swan's favor on that issue, and the real focus of the trial was on causation.

The final consideration is whether anything was done to cure the prejudicial effect of the improper comments. The trial court gave a curative instruction in response to Swan's objection to the Dickson–Witmer comment. Generally, a curative instruction adequately mitigates any prejudice,[4] and we are satisfied that it did so in this case. With respect to the radiologist comment, Swan accepted the trial court's suggestion that she respond in her

1.  *Ray v. State,* 587 A.2d 439, 443 (Del.1991) ("This Court has, on repeated occasion, emphasized the fact that a defendant who fails to object contemporaneously to an improper statement made in a closing argument waives the right to raise the issue on appeal ... [and] requires us to apply a plain error standard.").

2.  *DeAngelis v. Harrison,* 628 A.2d 77, 80 (Del. 1993).

3.  *Id.* at 81.

4.  *Dunn v. Riley,* 864 A.2d 905, 909 (Del.2004).

rebuttal. Swan pointed out that neither side called the radiologist and that her reason was, "it's enough, I've talked to enough people, it's time to present this case to you all." Assuming, without deciding, that the radiologist comment was improper, it was a minor part of the closing argument and Swan's rebuttal cured any prejudice. Thus, we conclude that the trial court acted within its discretion in directing Swan to address the issue herself instead of giving a curative instruction.

▆▆▆ Swan's complaints about the remaining three comments are reviewed for plain error, which is error "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] Balan's comments did not create that degree of prejudice. At most, they deprecated Swan's case and, to some extent, her attorney. Swan had the opportunity to respond to Balan's comments in rebuttal, and, whether she did or not, Balan's comments did not deprive Swan of a fair trial.

▆▆▆ Swan also argues that the jury's verdict was against the great weight of the evidence. A jury verdict will be set aside on that ground only if the evidence preponderates so heavily against the jury's conclusion that a reasonable juror could not have reached that result.[6] Swan argues that, because there was overwhelming evidence that Balan negligently performed a partial mastectomy rather than a biopsy, Swan was entitled to damages for the harm caused by the excessive tissue removal and the increased risk of healing complications inherent in a larger wound. Swan also contends that Balan's failure to promptly treat the aspergillus infection

added to her damages because it necessitated the invasive tram flap surgery.

We do not know what part of Balan's treatment the jury found to be negligent. Given Balan's admission at trial that a wide resection would not be the proper treatment for recurrent breast cancer, it seems likely that the jury found him negligent in removing more breast tissue than necessary for a biopsy. But Swan never argued that she was damaged by that act alone. She sought damages for the postoperative complications that resulted in the tram flap surgery. Although there was expert testimony that excess tissue removal increases the risk of healing complications, Swan did not pursue a claim on that theory. She did not present any expert to quantify the increased risk and the jury was not instructed to consider it as an element of damages. Rather, Swan made a strategic decision to claim that Balan's negligence caused her gruesome post-biopsy wound and necessitated the seriously invasive tram flap surgery.

The jury rejected that claim, and there was sufficient evidence to support its verdict. Swan's medical records established that the site of the biopsy had been radiated repeatedly and that the tissue showed "radiation change." In addition, several expert witnesses testified that the prior radiation caused necrotic tissue and poor vascularization in the affected breast. According to those experts, it was the radiation damage, not the size of the biopsy or the post-biopsy care, that necessitated the tram flap surgery. The evidence about Swan's aspergillus infection also supported the jury's verdict. Despite Swan's claim that the aspergillus infection was severe and that it contributed to her post-biopsy deterioration, one of Balan's experts testi-

---

5. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

6. *Amalfitano v. Baker*, 794 A.2d 575, 577 (Del. 2001); *Storey v. Camper*, 401 A.2d 458, 465 (Del.1979).

fied that the aspergillus infection was not serious and had no bearing on the need for the tram flap surgery. In fact, by the time of the tram flap surgery, the infection had completely resolved. In sum, there was competent evidence from which a jury could conclude that Balan negligently removed too much tissue in the biopsy. There also was competent evidence, however, that Balan's negligence did not cause the healing problems, and that Swan needed to have the tram flap surgery because of her prior radiation treatment.

## CONCLUSION

Based on the foregoing, the judgment of the Superior Court is affirmed.