**Curtis DEMBY, Defendant Below, Appellant**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 202, 1996.

Supreme Court of Delaware.

Submitted: May 6, 1997.
Decided: July 10, 1997.

Joseph M. Bernstein (argued), and Joseph A. Gabay, Wilmington, for appellant.

Timothy J. Donovan, Jr. (argued), John P. Deckers and William E. Molchen, II, Department of Justice, Wilmington, for appellee.

Before WALSH, HOLLAND and BERGER, JJ.

HOLLAND, Justice:

The defendant-appellant, Curtis Demby ("Demby"), was indicted on charges of Murder in the First Degree [1] and Possession of a Firearm During the Commission of a Felony.[2] Demby was found guilty, as charged, after a five-week jury trial in the Superior Court. Following the guilty verdicts, a "penalty hearing" was held pursuant to 11 Del.C. § 4209(b). The Superior Court sentenced Demby to life imprisonment, without benefit of probation or parole, for the Murder in the First Degree conviction,[3] and to an additional term of 20 years incarceration for the firearm conviction.

Demby has raised three arguments in this direct appeal. First, according to Demby, the Superior Court erred when it ruled that the defense would not be permitted to present evidence that Freddy Flonnory ("Flonnory") told Michael Lehman ("Lehman") that he, not Demby, had shot Howard Brown ("Brown"). Second, Demby contends that the Superior Court erred when it ruled that Nicole Brown's out-of-court statement to Detective Thomas Spell ("Detective Spell"), in which she told the police that Damone Flowers ("Flowers") had told her that he saw Demby shoot Brown, was admissible under 11 Del.C. § 3507 and Rule 801(d)(1) of the Delaware Rules of Evidence ("D.R.E."). Third, Demby alleges that the Superior Court erred when it ruled that the State could wait until after the cross-examination of any prosecution witness had concluded to

decide whether it wanted to introduce the out-of-court statement of that witness pursuant to 11 Del.C. § 3507.

This Court has concluded that Demby's first contention is correct. Consequently, Demby's judgments of conviction must be reversed. The second and third issues can be addressed by the Superior Court at Demby's new trial.

### Facts

On December 19, 1994, the fourteen-year-old homicide victim, Brown, was in the area of 27th and Bowers Streets in the City of Wilmington. Brown was with several of his friends, including Carlton "Turtle" Berry ("Berry") and William "Braheem" Roane ("Roane"). According to Berry, prior to the shooting, Demby had approached the group and gotten into an argument with Brown.

Berry testified that the argument was about a girl. Brown, who was physically smaller and several years younger than Demby challenged Demby to a fistfight. Demby declined, however, leaving for a brief time.

When Demby returned, he was accompanied by Flonnory. The argument with Brown resumed. Berry saw Flonnory put his hands to his waist as if he had a gun.[4] Roane testified that Brown wanted to fight Demby "one-on-one." Roane stated that he tried to end the argument by telling Demby and Howard to "chill."

Demby and Flonnory ended the encounter without incident again by leaving the area. Berry also testified that Demby told Brown he would be back and that Brown better not be out there when he returned. Berry then went to his own house. According to Roane's testimony, as Demby walked away he stated, "I'm going to come back and I'll be

1. *See State v. Demby*, Del.Supr., 672 A.2d 59 (1996) (answering a certified question of law that case could proceed to trial as a capital murder case).

2. Prior to trial, the State entered a *nolle prosequi* on an additional charge of Possession of a Deadly Weapon by a Person Prohibited.

3. The jury found, by a vote of 12 to 0, that the State had established the existence of a "statuto-

ry aggravating circumstance." The jury also found, by a vote of 7 to 5, that the mitigating circumstances outweighed the aggravating circumstances.

4. Detective Spell testified that after the shooting, Berry told the police that Flonnory had pulled out a gun, but Demby told him to put it away.

busting him." Roane testified that "busting" means "shooting."

Brown was with Ronald Maddrey ("Maddrey"), Michael Woodlin ("Woodlin") and Dean Hutt ("Hutt") just before the shooting occurred. According to Maddrey, he met Brown and the others at 27th and Bowers Streets, in front of Maddrey's grandmother's house. Woodlin was with his dog, a pit bull. Brown told Maddrey about the argument with Demby. Brown also told Maddrey that Demby had warned him not to be around when he returned.

Woodlin's dog began chasing a cat. Maddrey, Woodlin and Brown followed the dog. Hutt stayed behind. After a few blocks, the dog caught the cat. As they were watching the dog and the cat fighting, Maddrey saw a person, who he identified as Demby, walk to where Brown was standing. According to Maddrey, Demby then began shooting. Maddrey testified that he saw the man's face and he was positive it was Demby.

After the shooting occurred, Maddrey ran to help Brown. Hutt heard the gunshots and also came to the scene. Maddrey told Hutt that he had seen Demby shoot Brown.

The crime was reported to the police at approximately 8:52 p.m. on December 19, 1994. Maddrey and Hutt were interviewed by the police within hours after the shooting. Both of them told the police what they had seen. Several hours later, the police learned that Demby was with his girlfriend, Simone Berry, at her mother's house. The police arrested Demby.

On January 3, 1995, approximately two weeks after Brown's death, Flonnory and Lehman escaped together from Ferris School. After Lehman had been captured, he was interviewed on videotape by Detective Mark Williams ("Detective Williams") of the Delaware State Police. In the interview, Lehman told Detective Williams how the escape took place.

Lehman also stated that he was with Flonnory for several days after the two of them had escaped. Lehman told Detective Williams that while he and Flonnory were hiding out together, Flonnory told him about several prior acts of criminal conduct. According to Lehman, Flonnory told him that he, not Demby, had killed Brown. Lehman stated that Flonnory also told him some of the details of the Brown homicide.

### *Lehman's Statement Flonnory Admits Shooting*

Demby's first argument on appeal is that the Superior Court erred, as a matter of law, in refusing to permit the defense to introduce evidence that Flonnory told Lehman that he had killed Brown. That argument has two aspects. The first relates to the admissibility of Lehman's videotaped pretrial statement to the police. The second relates to the admissibility of the self-incriminating hearsay statement attributed by Lehman to Flonnory that was on the videotape.

Lehman was called as a defense witness at trial. Outside the presence of the jury, Lehman acknowledged that he had escaped from Ferris School with Flonnory on January 3, 1995. He refused, however, to answer any questions concerning his conversations with Flonnory. Instead, Lehman invoked his privilege against self-incrimination that is provided by the Fifth Amendment to the United States Constitution.

Demby's trial attorney then sought to introduce Lehman's videotaped interview by the police into evidence. Demby contended that the Lehman videotape itself was admissible under D.R.E. 803(5)[5] ("recorded recollection"), D.R.E. 803(24) (residual hearsay exception), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Demby argued to the Superior Court that the hearsay statement in Lehman's videotape, i.e., that Flonnory had told Lehman that Flonnory, not Demby, killed Brown, was admissible as a "statement against interest" under D.R.E. 804(b)(3) and the Due Process Clause. The State opposed the application by Demby's trial attorney.

---

5. D.R.E. 803(5) is the "recorded recollection" exception to the "hearsay rule." In all cases where evidence is sought to be admitted under D.R.E. 803, the availability of the "declarant" is immaterial.

The Superior Court ruled that the videotape of Lehman's interview was not admissible evidence. First, the Superior Court held that the videotape did not qualify under the "recorded recollection" exception to the hearsay rule. *See* D.R.E. 803(5). The Superior Court concluded that D.R.E. 803(5) is limited to situations where a witness, who once had knowledge about a matter, has insufficient recollection to enable him to testify accurately about the matter. Because Lehman refused to testify, the Superior Court reasoned it could not be said that Lehman had insufficient recollection to enable him to testify.

Second, the Superior Court held that the videotape did not qualify under the "residual" exception to the hearsay rule. *See* D.R.E. 803(24). The Superior Court ruled that to qualify under D.R.E. 803(24), a statement had to possess "circumstantial guarantees of trustworthiness." The Superior Court characterized the inquiry for the trial judge under D.R.E. 803(24) as "whether or not Lehman can be said to be telling the truth that Flonnory said certain things to him."

### D.R.E. 803(5) Recorded Recollection

D.R.E. 803(5) is an exception to the hearsay rule. It permits the admission into evidence of the "recorded recollection" of a witness if certain conditions are met. *See* 5 WEINSTEIN'S FEDERAL EVIDENCE §§ 803.10[1]–803.10[6] (Joseph M. McLaughlin ed., 2d ed. 1997). D.R.E. 803(5) provides that a "memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately," which is "shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly," will not be excluded by the hearsay rule. D.R.E. 803(5).

Two rationales "justify admission of recorded recollection despite the hearsay rule." 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.10[1]. First, "use of the memorandum is necessary because the witness is 'unavailable' as a result of the witness's lack of memory of the event." *Id.* Second, "a contemporaneous record is inherently superior to a later recollection subject to the fallibility of human memory." *Id.; see* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 7.15 (3d ed. 1996) (Recorded Recollection: Rationale and Application). The Comment to D.R.E. 803 further explains that "Rule 803(5) should be read *more broadly than its literal language*. A recorded statement should qualify for admission even if it was recorded by another party if it appears that the statement does in fact reflect the prior knowledge of the witness." D.R.E. 803 cmt. (emphasis added).

In this case, the videotape was an accurate record of Lehman's statement to Detective Williams. The videotape was made at a time when Lehman's conversations with Flonnory were fresh in Lehman's mind. Thus, the only missing predicate for the admissibility of the videotape under D.R.E. 803(5) was the requirement that the witness have "insufficient recollection."

The Superior Court held that Demby had not satisfied the requirements for admissibility of the videotape under D.R.E. 803(5). Notwithstanding the commentary to D.R.E. 803(5), the Superior Court refused to construe the rule broadly. The Superior Court concluded that the defense had not satisfied the "insufficient recollection" requirement because Lehman's refusal to testify did not constitute a showing of "insufficient recollection."

Demby contends that Lehman's invocation of his Fifth Amendment right was a legal bar to his ability to "recall" the videotaped statements on the witness stand. Thus, according to Demby, it constituted a sufficient predicate for invoking the recorded recollection exception to the hearsay rule set forth in D.R.E. 803(5). It is not necessary to decide that issue in this appeal.

■ Instead, we hold that Lehman's videotaped statement was admissible pursuant to Demby's alternative reliance upon the residual hearsay exception of D.R.E. 803(24). The Delaware residual hearsay exception provides that a statement not specifically covered by any of the other exceptions in D.R.E. 803 but "having equivalent circumstantial guarantees of trustworthiness" will

not be excluded by the hearsay rule, if the court determines that:

> (A) [t]he statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

D.R.E. 803(24); *see* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 7.28, at 346–54 (Change Through Evolution and the Residual Hearsay Exceptions).

These 803(24) requirements were met in the case *sub judice.* *See Tome v. United States,* 513 U.S. 150, 166, 115 S.Ct. 696, 705, 130 L.Ed.2d 574 (1995).[6] First, the videotaped statement was offered as evidence of a material fact: that Flonnory, not Demby, killed Brown. Second, the videotaped statement was more probative on that point than any other evidence that could be procured by Demby because Lehman and Flonnory, who were involved in the alleged statement, both invoked their Fifth Amendment privilege at trial. Third, the purpose of the Delaware Rules of Evidence and the interests of justice would be served by the admission of that statement on the videotape into evidence at Demby's trial.

The United States Supreme Court has held that the "hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *see Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–2152, 60 L.Ed.2d 738 (1979). Demby properly relies upon D.R.E. 803(24) to avoid a "mechanistic" application of the hearsay rule that concerned the Supreme Court in *Chambers* and *Green.* The videotape of Lehman's pretrial statement to the police was admissible defense evidence.

### D.R.E. 804(b)(3) Statement Against Interest

■ The Superior Court ruled that even if the videotape itself qualified for admissibility under D.R.E. 803(5) or 803(24), Flonnory's statements to Lehman that he, not Demby, had killed Brown, did not qualify as a "statement against interest" under D.R.E. 804(b)(3). D.R.E. 804(b)(3) provides that a statement against penal interest is not excluded by the hearsay rule if the "declarant" is "unavailable as a witness." In fact, declarations against interest are the most prevalent exception for allowing the admission of hearsay statements "made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination." *Chambers v. Mississippi,* 410 U.S. 284, 299, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973); *see* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 7.27, at 339–45 (3d ed. 1996) (Declarations Against Interest: Application of the Exception).

D.R.E. 804(b)(3) further provides, however, that a "statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." D.R.E. 804(b)(3). The Superior Court decided it had to make a preliminary determination concerning the reliability of the evidence before it could be admitted and considered by the jury. The Superior Court concluded that "[a]lthough ... the jury is the ultimate finder of the facts, defendant, in my view, has not made a threshold showing under 804(b)(3) that corroborating circumstances indicate clearly the trustworthiness of the statement." Demby's second argument on appeal challenges that ruling by the Superior Court.

There are three prerequisites for the admissibility of a "statement against interest" under D.R.E. 804(b)(3): first, the "declarant"

---

**6.** The United States Supreme Court has explained:

> When a party seeks to introduce out-of-court statements that contain strong circumstantial indicia of reliability, that are highly probative on the material questions at trial, and that are

better than other evidence otherwise available, there is no need to distort the requirements of Rule 801(d)(1)(B). If its requirements are met, Rule 803(24) exists for that eventuality.

*Tome v. United States,* 513 U.S. at 166, 115 S.Ct. at 705.

must be "unavailable"; second, the statement must "so far tend[ ] to subject him to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true"; and third, a "statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." D.R.E. 804(b)(3).

In this case, Flonnory was "unavailable" because he had invoked his Fifth Amendment privilege against self-incrimination. *See* D.R.E. 804(a)(1). Flonnory's statements to Lehman, if true, were against his penal interest. Flonnory's statement that he, not Demby, killed Brown was self-inculpatory. *See Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Accordingly, the dispositive issue becomes whether Demby satisfied the requirement in D.R.E. 804(b)(3) that "corroborating circumstances clearly indicate the trustworthiness of the statement." D.R.E. 804(b)(3).

■ The factors that a trial judge should consider in determining whether "corroborating circumstances clearly indicate the trustworthiness of the statement," as set forth by this Court are:

 (1) whether the statement was made spontaneously and in close temporal proximity to the commission of the crime;

 (2) the extent to which the statement was truly self-incriminatory and against penal interest;

 (3) consideration of the reliability of the witness who was reporting the hearsay statement; and

 (4) the extent to which the statement was corroborated by other evidence in the case.

*Outten v. State,* Del.Supr., 650 A.2d 1291, 1296–97 (1994); *see Chambers v. Mississippi,* 410 U.S. at 300–301, 93 S.Ct. at 1048–1049.

First, in this case, Flonnory's statements to Lehman were made within a few weeks after Brown was killed. Thus, they were made in close temporal proximity to the commission of the crime. Second, Flonnory's statements to Lehman were truly self-incrim-

inatory. Flonnory was likely to confide in Lehman, since they were confederates in crime at the time of the self-inculpatory remarks, having escaped together from Ferris School. *See Chambers v. Mississippi,* 410 U.S. at 300–301, 93 S.Ct. at 1048–1049; *United States v. Barrett,* 1st Cir., 539 F.2d 244, 251 (1976). Third, the trustworthiness of Lehman's statement on the videotape was enhanced by the fact that it was given to the police at a time when Lehman had an interest in providing accurate information to ameliorate his own pending criminal charges. *See Outten v. State,* 650 A.2d at 1297; *see also United States v. Nagib,* 7th Cir., 56 F.3d 798 (1995). *But see United States v. Mendoza,* 8th Cir., 85 F.3d 1347 (1996).

The fourth and final factor for assessing trustworthiness in *Outten* is the extent to which the statement against interest is "corroborated by other evidence in the case." *Outten v. State,* 650 A.2d at 1296. In *Outten,* this Court did not address how much corroboration should be required. That inquiry has been carefully analyzed, however, in the context of Rule 804(b)(3) of the Federal Rules of Evidence ("F.R.E."). *People v. Barrera,* Mich.Supr., 451 Mich. 261, 547 N.W.2d 280, 289 (relying on legislative history of F.R.E. 804(b)(3) in interpreting corresponding rule in Michigan Rules of Evidence), *cert. denied,* —— U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996).

D.R.E. 804(b)(3) is virtually identical to its federal and Michigan counterparts. Accordingly, an analysis of those rules is instructive. *Hoffman v. Cohen,* Del.Supr., 538 A.2d 1096, 1098 (1988). In *Barrera,* the Michigan Supreme Court looked "to the legislative history of [F.R.E.] 804(b)(3) for assistance in ascertaining Congress' intent." *People v. Barrera,* 547 N.W.2d at 289.

"Although Congress indicated what it believed would *not* be sufficient corroboration, it left the answer to what *would* be sufficient to case-by-case development." *Id.* at 290, 547 N.W.2d 280. In *Barrera,* the court recognized that there was a tension between the state's interest "in ensuring that evidence be credible," and a defendant's constitutional right, recognized in *Chambers,* that state "rules of evidence should not be rigidly ap-

plied to exclude reliable exculpatory evidence." *Id.* "It is clear that the standard for corroboration must not be too high." 11 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 804.06(3)[2], at VIII–283 (2d ed. 1994).

The dispositive questions that must be answered are: what minimum level of corroboration will satisfy Rule 804(b)(3), and what minimum level of corroboration will preclude exclusion of evidence under *Chambers? Id.* In *Barrera,* the court concluded:

> [T]he defendant's constitutional right to present exculpatory evidence in his defense and the rationale and purpose underlying [Rule 804(b)(3) of the Michigan Rules of Evidence] of ensuring the admission of reliable evidence must reach a balance. We believe they may be viewed as having an inverse relationship: the more crucial the statement is to the defendant's theory of defense, the less corroboration a court may constitutionally require for its admission.

*People v. Barrera,* 547 N.W.2d at 291.[7]

Demby argues there was evidence in the record which tended to corroborate the truthfulness of Flonnory's statements to Lehman. According to the State's witnesses, a possible motive for the shooting was an argument between Brown and Demby that took place just a few hours before the shooting. Berry told the police that, during this argument, Flonnory had pulled out a gun, but Demby told him to put the gun away. Witnesses who saw the perpetrator—Nate Dollard, Abe Farnum and Demetrius Brown—all described the person who shot Brown as being dressed in black.

Simone Berry testified that shortly after the shooting, Flonnory and Flowers came to

Demby's house and that they were both dressed in all black. In Flonnory's statement to Lehman, he allegedly told Lehman that "they got witnesses that said that they saw him, but they didn't see me." In fact, the Superior Court acknowledged the possibility that the shooting could have occurred the way Lehman said Flonnory had described it.

■ The corroboration requirement of D.R.E. 804(b)(3) is a preliminary question as to the admissibility of evidence. *See United States v. Garcia,* 7th Cir., 986 F.2d 1135, 1141 (1993). The trial judge must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination of the weight to be given to such evidence. 5 WEINSTEIN'S FEDERAL EVIDENCE § 804.06[5][c], at 804–59 (Joseph M. McLaughlin ed., 2d ed. 1997). The corroboration requirement should not be used as a means of usurping the jury's function. *Id.; see* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 7.27, at 341–42. For purposes of the threshold inquiry under D.R.E. 804(b)(3), "[e]vidence that the declarant was near the scene and had some motive or background connecting him with the crime should be sufficient collaboration." 5 WEINSTEIN'S FEDERAL EVIDENCE § 804.06[5][c], at 804–58.

Instead of making a threshold determination of whether corroborating circumstances existed, the Superior Court weighed the corroborating evidence and then decided the issue. *See United States v. Garcia,* 986 F.2d at 1141. In its ruling, that there was insufficient corroboration, the Superior Court focused on the fact that Flonnory's statements to the police contradicted what he allegedly told Lehman.[8] The Superior Court conclud-

---

**7.** The Supreme Judicial Court of Massachusetts has stated:

In determining whether the declarant's statement has been sufficiently corroborated to merit its admission in evidence, the judge should not be stringent. A requirement that the defendant corroborate the declarant's entire statement, for example, may run afoul of the defendant's due process rights under *Chambers v. Mississippi.* If the issue of sufficiency of the defendant's corroboration is close, the judge should favor admitting the statement. In most such instances, the good sense of the jury will correct any prejudicial impact.

*Commonwealth v. Drew,* 397 Mass. 65, 489 N.E.2d 1233, 1241 n. 10 (1986) (citation omitted).

**8.** Transcripts of Flonnory's statements to the police were presented by the State in opposition to Demby's D.R.E. 804(b)(3) argument. In the first three statements, Flonnory denied any involvement in the shooting. On March 15, 1995, however, Flonnory told the police about his involvement in the killing. Flonnory said that after the argument with Brown had taken place, Demby had obtained a gun from Flowers. Later on, according to Flonnory, he, Flowers and Demby

ed that Flonnory's statements to the police were more reliable than his alleged statement to Lehman. Since the record reflects corroboration, the question of whether Flonnory was telling the truth to Lehman in January 1995, or to the police on March 15, 1995, should have been for the jury to determine. *Accord United States v. Garcia*, 986 F.2d 1135 (1993).

■ "Few rights are more fundamental than that of an accused to present witnesses in his [or her] own defense." *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. at 1049. If there is some corroboration to support the self-inculpatory statement that another person committed the crime for which the defendant is on trial, that evidence should be presented to the trier of fact. *United States v. Garcia*, 986 F.2d 1135 (1993) (corroborating circumstance clearly indicated trustworthiness of unavailable passenger's statement that marijuana was his and defendant had no knowledge of it). The videotape of Lehman's interview, with the self-inculpatory statement attributed to Flonnory, should have been admitted into evidence. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Outten v. State*, Del. Supr., 650 A.2d 1291 (1994); *People v. Barrera*, 451 Mich. 261, 547 N.W.2d 280 (1996). Under the facts and circumstances of this case, the Superior Court's decision not to admit the Lehman videotape into evidence deprived Demby of a fair trial because he was denied his right to "present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. at 1049.

### Nicole Brown Section 3507 Statement

Demby's next argument on appeal is that the Superior Court erred, as a matter of law, in allowing the State to put in evidence, under 11 *Del.C.* § 3507 ("Section 3507"), Nicole Brown's out-of-court statement to Detective Spell. At trial, Flowers was called as a witness by the State. He was asked on direct examination whether he told Nicole Brown that he had tried to talk Demby out of

hurting Brown. Flowers was also asked whether he told Nicole Brown that he saw Demby shoot Brown. Flowers denied that he made those statements to Nicole Brown. The State then indicated that it had completed its direct examination of Flowers.

The State next called Nicole Brown to testify about her out-of-court conversations with Flowers. The State also indicated that it planned to call Detective Spell to testify about an out-of-court statement that he obtained from Nicole Brown concerning her out-of-court conversation with Flowers. The State contended that the out-of-court conversations between Flowers and Nicole Brown, as well as the out-of-court statement taken by Detective Spell from Nicole Brown, were both admissible under Section 3507.

Demby's objection at trial, that both statements were inadmissible under Section 3507, was overruled by the Superior Court. The Superior Court held that Section 3507 was not limited to situations where the out-of-court statement concerned something that the "declarant" personally saw or observed, i.e. actual knowledge, but could also encompass what another person told the declarant about what that person had seen or observed. Alternatively, the Superior Court held that Nicole Brown's out-of-court statement to Detective Spell was admissible under D.R.E. 801(d)(1), as a "prior inconsistent statement by a witness."

Nicole Brown was called by the State to testify before the jury. She testified that the only thing Flowers told her was that Demby and Brown were arguing and he told Demby to "let it go." She also testified that Flowers did not tell her who shot Brown. The State then was permitted to play a tape-recording of Nicole Brown's out-of-court statement to Detective Spell. In that statement, she told Detective Spell that Flowers told her that he saw Demby shoot Brown.

### Section 3507 Evidentiary Hearsay Rules

At common law, an out-of-court statement offered for the truth of the statement was

---

were riding around in a car. At some point, Demby got out of the car. A few minutes later, they heard shots and Demby came running back and jumped into the car. Flonnory told the

police that Demby wanted them to drive him to Philadelphia. Flonnory also told the police that Demby threw the gun out of the car on the way to Philadelphia.

inadmissible unless it fell into one of the recognized exceptions to the hearsay rule. The Delaware Rules of Evidence retain the common law's general prohibition against hearsay evidence. D.R.E. 802. Those Rules also either recognize or expand, the common-law exceptions to the hearsay rule. D.R.E. 801, 803, 804.

Section 3507 predates the Delaware Rules of Evidence, which were enacted effective July 1, 1980. Section 3507 provides:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

11 *Del.C.* § 3507.

The Comment to D.R.E. 801 states: "It is not intended that these rules change the provisions of 11 *Del.C.* § 3507 relating to the use of voluntary out-of-court statements as affirmative evidence." Consequently, the enactment of the Delaware Rules of Evidence did not affect Section 3507.

### *Admissibility of Nicole Brown's Statement*

█ Pursuant to Section 3507, out-of-court statements made by a witness become admissible as substantive evidence. The witness must testify on direct examination, however, concerning both the events perceived or heard and the out-of-court statements. *Ray v. State*, Del.Supr., 587 A.2d 439, 443 (1991). There is no requirement that the witness offer consistent trial testimony. 11 *Del.C.* § 3507(b).

In this case, the Superior Court relied upon Section 3507 to admit into evidence Nicole Brown's out-of-court statement to Detective Spell that Flowers had told her that he saw Demby shoot Brown. This Court examined the operation of Section 3507 in

*Ray v. State*, Del.Supr., 587 A.2d 439 (1991). In *Ray*, the defendant was charged with sexually abusing the five-year-old daughter of his girlfriend. *Id.* at 440. During the course of the police investigation, the victim told the police that Ray was the person who abused her. She also told the same thing to her aunt. However, at trial, the victim declined to tell the jury what Ray did to her. The victim did testify that she told her aunt and the police what happened to her, but declined to testify about what she told them. *Id.* at 443. Over the defense's objection, the Superior Court admitted into evidence the prior out-of-court statements made by the victim to her aunt and the police officer. *Id.* at 443.

In *Ray*, this Court held that the victim's out-of-court statements, i.e., what she told the police and her aunt, did not qualify for admission under Section 3507, stating:

But the use of hearsay statements under section 3507 must be carefully circumscribed in order to avoid, as occurred here, the only direct evidence concerning the commission of the offense against a child being presented through the testimony of third parties relating what the victim stated on a prior occasion. The statute becomes meaningless if there is no opportunity to test the truth of the statements offered.

*Id.* at 444. In *Ray*, the child victim refused to testify about the events she perceived. *Id.* at 443–44. This Court held that, in view of the limited foundation presented, the admission of the child victim's out-of-court statements was a violation of the defendant's right of confrontation guaranteed by the Sixth Amendment of the United States Constitution. *Id.*

The concern expressed by this Court in *Ray* centered on the absence of the foundation needed before the admission of any Section 3507 statement. The foundation required for the Section 3507 statement to be admissible was necessary in order to comply with the confrontation requirements of the Sixth Amendment. Demby's Sixth Amendment confrontation rights are also paramount in analyzing the admissibility of Nicole Brown's testimonial evidence.

In the case *sub judice*, Nicole Brown had no first-hand knowledge concerning the shooting. She was only repeating to Detective Spell what she had been told by Flowers. The fact that Nicole Brown testified from the witness stand that Flowers never told her that he saw Demby shoot Brown does not change the hearsay nature of her out-of-court statement to Detective Spell about what Flowers said.

 Nicole Brown's out-of-court statement telling Detective Spell what Flowers allegedly told her, was "hearsay within hearsay." D.R.E. 805. Under D.R.E. 805, the statement attributed to Flowers is inadmissible "hearsay included within hearsay" unless it "conforms with *an* exception to the hearsay rule." D.R.E. 805 (emphasis added). If double hearsay is being offered into evidence, each aspect must qualify *independently* as an exception to the hearsay rule. D.R.E. 805.[9]

 In this case, we have held that the statement attributed to Flonnory on the Lehman videotape was admissible hearsay within admissible hearsay.[10] The Sixth Amendment's Confrontation Clause was not implicated because the Lehman videotape and Flonnory's statement were being presented as evidence by the defendant. Any testimonial evidence offered *against* the defendant by the State, however, is subject to the defendant's confrontation rights that are guaranteed by the Sixth Amendment of the United States Constitution. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

 The Sixth Amendment has been interpreted to guarantee that accusatory hearsay statements which do not come within a firmly rooted hearsay exception are presumptively inadmissible unless they are supported by a showing of a particularized guarantee of trustworthiness. *Idaho v. Wright*, 497 U.S. at 818, 110 S.Ct. at 3148. "The Confrontation Clause, in other words, bars the admission of some evidence that would

otherwise be admissible under *an* exception to the hearsay rule." *Id.* at 814, 110 S.Ct. at 3146 (emphasis added). The State argues that since Nicole Brown and Flowers both testified, and were available for cross-examination, Demby's Confrontation Clause rights are not an issue.

 Nevertheless, Nicole Brown could not testify from the witness stand about what Flowers told her, unless his statement to her was admissible pursuant to an exception to the hearsay rule. *See Idaho v. Wright*, 497 U.S. at 818, 110 S.Ct. at 3148. Similarly, any hearsay *within* Nicole Brown's Section 3507 statement was inadmissible unless it was permitted by an exception to the hearsay rule. *A fortiori*, Nicole Brown's pretrial recitation of Flowers's hearsay statement could not be admitted as an inconsistent statement by *her*, if she could not give that testimonial evidence at trial. D.R.E. 801(d)(1)(A); *see* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 6.4, at 230 (3d ed. 1996) (Prior Statements of a Witness).

The State argues that in this case, because Flowers had already testified, the portion of Nicole Brown's out-of-court statement, regarding what Flowers had allegedly told her, was admissible non-hearsay as a "prior inconsistent statement" by *Flowers* pursuant to D.R.E. 801(d)(1)(A). The admissibility of Nicole Brown's pre-trial statement of what Flowers said to her, as a prior inconsistent statement *by Flowers*, should be decided by the Superior Court in the first instance in the context of its presentation at Demby's next trial. The standards for admissibility under the Sixth Amendment, Section 3507, and the Delaware Rules of Evidence are set forth in this opinion. An application of those standards, however, is dependent upon the testimonial evidence presented by Flowers at Demby's next trial and the State's proof in support of its theory of admissibility, as either non-hearsay or as a hearsay exception. *See, e.g.,* D.R.E. 613, 801(d)(1)(A),

---

**9.** D.R.E. 805 provides: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." D.R.E. 805.

**10.** The Lehman videotape was admissible pursuant to D.R.E. 803(24). Flonnory's statement against penal interest was admissible pursuant to D.R.E. 804(b)(3).

801(d)(1)(C), 803, 804; *see also* GRAHAM C. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 6.4 (3d ed. 1996) (Prior Statements of a Witness).

### Section 3507 Statement Timing of Introduction

 Finally, Demby argues that the Superior Court violated the "timing" requirement established by this Court, when it permitted the State to delay deciding whether it would offer any prosecution witness's out-of-court statement into evidence until after the witness had been cross-examined by the defense. *See Smith v. State,* Del.Supr., 669 A.2d 1 (1995). The Superior Court ruled that it would permit the State to introduce any Section 3507 statement after its witness had been questioned on cross-examination. Demby took exception to that ruling at trial.

This Court has previously considered the " 'subject to cross-examination' requirement of [Section] 3507 from a timing perspective." *Id.* at 7. Regarding the "timing" of the use of a Section 3507 statement, this Court held in *Smith:*

> [T]he [out-of-court] statement must be offered into evidence no later than at the conclusion of the direct examination of the declarant. We are not here restricting the offering party's ability to introduce a [Section] 3507 statement into evidence through someone other than the declarant or at any time prior to the conclusion of the declarant's direct testimony. We recognize that, for tactical and other reasons, the offering party should be allowed as much flexibility as the statute permits. However the introduction of a [Section] 3507 statement cannot be timed so as to place any strategic burden on the non-offering party.

*Id.*

During Demby's trial, the Superior Court allowed the State to wait until after cross-examination was concluded to decide whether to offer any prosecution witness's out-of-court statement into evidence. That general ruling was contrary to this Court's holding in *Smith. See id.* The timing requirements set forth in *Smith* should be followed at Demby's new trial.

### Conclusion

The Superior Court's judgments of conviction are reversed. Demby's case is remanded for a new trial in accordance with this opinion.