# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTINA OZDEMIR, | § | |
| | § | No. 500, 2013 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for New Castle County |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1303015680 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 14, 2014
Decided: July 23, 2014
Revised: September 8, 2014

Before **HOLLAND**, **BERGER** and **RIDGELY**, Justices.

Upon appeal from the Superior Court. **REVERSED**.

Nicole M. Walker, Esquire (*argued*), Wilmington, Delaware, for Appellant.

Karen V. Sullivan, Esquire (*argued*), Department of Justice, Wilmington, Delaware, for Appellee.

**BERGER**, Justice:

In this appeal we consider whether Family Court records may be used in the Superior Court to prove that appellant committed the offense of interference with custody. The disputed records include the Family Court's factual findings about appellant's conduct in the custody dispute that led to the criminal charges. The trial court admitted the records, without regard to their content, because they were certified court documents. We hold that, without redaction, the Family Court records were inadmissible because they include hearsay. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Christina Ozdemir and Douglas Riley began a relationship in 2005. Ozdemir was living in New York at the time, but she moved to Delaware to live with Riley shortly after they began seeing each other. The couple had a son in 2007 and a daughter in early 2009. In June 2009, Ozdemir told Riley that she was going to New York for two weeks with the children. She and the children never returned. Riley filed a petition for custody in Delaware. In response, Ozdemir filed petitions for custody and for a protective order in New York. In November 2009, the Delaware Family Court and the New York court held a telephonic joint hearing, during which Ozdemir and Riley were present. The courts determined that Delaware had jurisdiction over the custody matter. Following the joint hearing, the Family Court entered an interim custody order awarding Ozdemir sole legal custody and primary residency of the children. Riley was given limited visitation

2

rights. Ozdemir failed to bring the children to some of the scheduled visits, and the Family Court found her in contempt.

In October 2010, the Family Court entered a temporary custody order awarding Ozdemir and Riley joint legal custody and shared residency on an alternating monthly basis. The trial court held a review hearing in April 2011, but Ozdemir failed to attend. At the review hearing, the Family Court entered another order ("the April 2011 Order"),[1] awarding Riley sole legal custody and primary residency of the children. Riley attempted to enforce the April 2011 Order in New York, but the New York police did not help him.

In March 2012, the Family Court appointed a guardian *ad litem* to represent the children's interests. In January 2013, the Family Court held more hearings. Ozdemir did not attend. On January 28, 2013, the Family Court ruled: "Based on Mother's continual thwarting of Court orders and therapeutic reunification, [the guardian *ad litem*'s] recommendations, and Father's testimony, the Court finds that it is in the best interests of [the children] to be placed in Father's care EFFECTIVE IMMEDIATELY."[2] The court also demanded that Ozdemir appear on February 18, 2013, with the two children. She did not show up that day, and a warrant was issued for her arrest. In April 2013, the Federal Marshal's Fugitive

---

[1] Appellant's Appendix at A-9. Ozdemir filed a petition in New York to have the Delaware April 2011 Order modified, but her petition was dismissed on December 12, 2011. That decision was affirmed by the New York Supreme Court, Appellate Division, on December 12, 2012.
[2] *Id.* at A-25.

3

Task Force took Ozdemir into custody in Miami, Florida, and she was returned to Delaware. Her children were found in New York, and brought to Delaware in May 2013. Ozdemir was indicted on two counts of felony interference with custody.[3]

At trial, the State offered into evidence five unredacted Family Court orders (the "Orders")[4] to establish that Riley was entitled to custody of the children, and that Ozdemir had intentionally withheld the children from him. In addition to the bottom-line custody rulings, the Orders contained statements by the guardian *ad litem*, factual findings by the Family Court, and other statements extremely prejudicial to Ozdemir. For example, in reciting the history of the litigation, the Family Court stated, "Mother has exhibited a pattern of disregard for this Court's Orders . . . ."[5] In another Order, the Family Court described the guardian *ad litem*'s testimony and recommendations:

> [The guardian *ad litem*] stated that since the last hearing, there has been no meaningful progress towards therapeutic reunification. [The guardian *ad litem*] faults Mother for the lack of progress, as she has willfully obstructed any progress that could have been made.

\* \* \*

---

[3] 11 *Del. C.* § 785.
[4] *See* Appellant's Exhibits 1–5; s*ee also* Appellant's Appendix at A-5–33.
[5] Appellant's Appendix at A-8.

4

> Based on this history of defiance, the Court is satisfied that Mother has disregarded numerous Court mandates. The Court gave Mother numerous opportunities to comply with Court orders, but it can no longer allow Mother to place herself above the law . . . .[6]

Ozdemir objected to the admission of the Orders, but the Superior Court overruled her objections and allowed them into evidence without redaction. Other than the Orders, Riley provided most of the State's evidence at trial. At the close of the State's case, Ozdemir moved for judgment of acquittal. The Superior Court granted her motion as to the two counts of felony interference with custody, but the case went to the jury on two counts of misdemeanor interference with custody. The jury found Ozdemir guilty on both counts. This appeal followed.

## DISCUSSION

Ozdemir claims that the Superior Court committed reversible error by admitting the unredacted Orders because they contain hearsay within hearsay, and irrelevant and inflammatory statements by the Family Court. She also argues that admission of the Orders violated her Confrontation Clause rights under the Sixth Amendment to the United States Constitution.[7] We conclude that the unredacted Orders contain inadmissible hearsay that was highly prejudicial to Ozdemir.

---

[6] *Id.* at A-24, 26.

[7] Our rulings on the evidentiary challenges make it unnecessary to reach the constitutional claim.

### *I. Hearsay Within Hearsay*

Delaware Rule of Evidence 803(8) provides a hearsay exception for "records, reports, statements, or data compilation in any form" of a public agency recording "activities or matters observed pursuant to duty imposed by law."[8] In *Trawick v. State*,[9] this Court addressed the admissibility of a Maryland court record offered in support of a motion to declare the defendant an habitual offender. We held that the record was admissible as a public record because "[a] certified court record of a conviction is a record from a public agency," and "[i]t is undisputed that sentencing a defendant is a duty imposed on the courts by law."[10] Further, the Court noted that the Maryland court record was self-authenticating because it was a certified public document under court seal.

Ozdemir objected to the admission of the Orders at trial, claiming that "some portions of those documents contain hearsay and findings of fact that [she is] not able to attack or question."[11] The trial court, apparently relying on *Trawick*, ruled that there were no hearsay concerns because the Orders were self-authenticating, public records that contain the Court seal. That analysis did not go far enough. Nothing in *Trawick* suggests that a public record is somehow immune from the

---

[8] D.R.E. 803(8).
[9] 845 A.2d 505 (Del. 2004).
[10] *Id.* at 509.
[11] Appellant's Appendix at A-36.

remaining rules of evidence. A document that otherwise qualifies as a public record may be inadmissible for other reasons.[12]

Under D.R.E. 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule."[13] In other words, "[i]f double hearsay is being offered into evidence, each aspect must qualify *independently* as an exception to the hearsay rule."[14] The Orders include double hearsay that is not independently admissible:

- "[The guardian *ad litem*] requested basic information from Mother about [the children]. Mother failed to provide [her] with the requested information."
- "[The guardian *ad litem*] stated that Mother cancelled a therapeutic visitation session with Dr. Franklin less than an hour before it was scheduled to begin. Moreover, [the guardian *ad litem*] reported to the Court on numerous occasions that Mother would fail to respond to her phone calls and emails."
- "[The guardian *ad litem*] faults Mother for the lack of progress [towards therapeutic reunification], as she has willfully obstructed any progress that could have been made."[15]

---

[12] We note that not all public records fall within the D.R.E. 803(8) hearsay exception. Specifically, "factual findings offered by the government in a criminal cases" are excluded. D.R.E.803(8)(C). Arguably, exclusion (C) is applicable—the Orders were offered by the State in a criminal case, and they contain factual findings made by the Family Court. But the parties did not address this point, so we will not rule on it.

[13] D.R.E. 805.

[14] *Demby v. State*, 695 A.2d 1152, 1162 (Del. 1997) (emphasis in original).

[15] Appellant's Appendix at A-22–24. For additional examples of statements made by the guardian *ad litem*, see Appellant's Op. Br. at 12–13.

As a result, although the Orders may be public records, they either should have been excluded, or the inadmissible portions of the records should have been redacted.

## *II. Irrelevant and Inflammatory Factual Findings*

Ozdemir also complains that the Orders should have been excluded because they contain findings of fact that are irrelevant and highly inflammatory. Because Ozdemir did not raise these issues at trial, this Court reviews for plain error, which is error so "clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process."[16] We agree that all but one or two sentences in the Orders are irrelevant, and that the rest of the content is highly prejudicial. The trial court's admission of the Orders, without redaction, was plain error.

The offense of interference with custody has three elements. The defendant (1) must be a relative of a child under the age of 16; (2) must know that he or she has no legal right to custody of the child; and (3) must take the child from the child's lawful custodian with the intent to hold the child for a prolonged period of time.[17] The State introduced the Orders to establish Riley's custodial rights to the children, to prove that Ozdemir intentionally withheld the children, and to prove that she knew that her actions were illegal.

---

[16] *Bullock v. State*, 775 A.2d 1043, 1046–47 (Del. 2001).
[17] 11 *Del. C.* § 785.

8

The Superior Court admitted the Orders without redaction on the theory that "[n]othing is extraneous" in another judge's orders.[18] The trial court reasoned that "you don't get to relitigate another judge's decision that hasn't been appealed and [] contains facts and your client is involved. . . ."[19] The trial court instructed the jury to "consider the document[s] solely for purposes of custody."[20] But the Family Court's findings of fact, even if not inadmissible hearsay, were made in a civil case under a lower standard of proof. Moreover, the details about Ozdemir's obstreperous behavior and general disregard for the judicial process have no bearing on the interference with custody charges.

One Order, for example, was a ten-page Opinion and Order that reviewed the history of the custody dispute, and held Ozdemir in contempt. The State only needed to introduce the Family Court's statement that, "it is in the best interests of [the children] to be placed in Father's care EFFECTIVE IMMEDIATELY"[21] in order to prove that Riley had sole custody. Instead, the jury heard the Family Court judge's harsh criticism of Ozdemir's character and conduct:

- "Mother has exhibited a pattern of disregard for this Court's Orders."[22]
- "Mother has flouted this Court's authority and its existing and prior orders. She has failed to

---

[18] Appellant's Appendix at A-40.
[19] *Id.* at A-37.
[20] *Id.* at A-55–57.
[21] *Id.* at A-25; *see also id.* at A-9 ("On April 12, 2011, this Court issued an order . . . granting Father sole legal custody and primary residency of the children.").
[22] *Id.* at A-8.

9

promote a relationship between Father and the children. Mother's credibility was questioned at the first hearing. . . ."[23]
- "Throughout litigation, Mother has engaged in evasive behavior with the Court and with others acting in the interests of [the children]."[24]
- "Mother has kept the children with her on Long Island and thwarted all attempts to reunify [the children with their father]."[25]

These, and similar statements, have no probative value. They are inflammatory, and they came from a judge, whose evaluation of Ozdemir would carry significant weight with the jury. Under the simple balancing test in D.R.E. 403, the Orders' "probative value is substantially outweighed by the danger of unfair prejudice."

Finally, we must reject the State's argument that the admission of the Orders was harmless error. In deciding whether the error was harmless beyond a reasonable doubt, "[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was unattributable to the error."[26] The State relied on the Orders, and, to a lesser extent, Riley's testimony about the contents of the Orders, to prove its case. Given the Orders' extremely damaging fact-finding and conclusions, we are not satisfied that they did not affect the verdict. Thus, the

---

[23] *Id.* at A-9.
[24] *Id.* at A-23.
[25] *Id.* at A-25.
[26] *Wheeler v. State*, 36 A.3d 310, 320–21(Del. 2012) (quoting *Sullivan v. Louisiana*, 508 U.S. 259, 279 (1993)).

10

error in admitting the unredacted Orders was not harmless beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing, the judgments of conviction are hereby REVERSED and this matter is REMANDED for further action.  Jurisdiction is not retained.